Filed 7/20/26  Mourey v. Kobseff CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DANIEL MOUREY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LYNN KOBSEFF, Individually and as Administrator, etc.,<br><br>    Defendant and Respondent. | D086557<br><br><br><br>(Super. Ct. No. 24CU010288C) |


APPEAL from a judgment of the Superior Court of San Diego County, Judy S. Bae, Judge.  Affirmed.

PHG Law Group and Byron K. Husted for Plaintiff and Appellant.

Law Office of Kyle W. Peterson, Kyle W. Peterson; The DLJ Law Firm, and Dorian L. Jackson, for Defendant and Respondent.

Plaintiff Daniel Mourey appeals from a judgment granting defendant Lynn Kobseff's special motion to strike his complaint against her under the anti-SLAPP statute.  (Code Civ. Proc.,[1] § 425.16.)  He contends the trial

_____

[1]    All further undesignated statutory references are to the Code of Civil Procedure.

court erred in ruling that his claims were based on protected petitioning activity within the scope of the anti-SLAPP statute. We reject Mourey's claim of error and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Complaint*

In September 2024, Mourey sued Kobseff individually and as administrator of the Estate of William Bellarts. He alleged claims for breach of fiduciary duty, unjust enrichment, and constructive trust.

The complaint alleged that Mourey is in the business of real estate. In 2022, he learned of a San Diego property that was in foreclosure as a result of the owner Bellarts's death on April 23, 2022. Mourey contacted Larry Thompson, a purported heir of Bellarts, and negotiated an agreement to assist Thompson in opening probate and saving the property from foreclosure. At the time, Mourey and Thompson believed Thompson was the sole heir to the estate. Mourey agreed to pay the outstanding debt on the property with the understanding that he would ultimately purchase the property from the estate for fair market value. Mourey spent significant time and resources to stop the foreclosure and initiate the probate process, including paying about $14,000 to the foreclosing company and getting a fiduciary to file a petition for probate and take over administration of the Bellarts estate.

Unbeknownst to Mourey, however, Thompson "was adopted" and Kobseff was the "actual heir" to the Bellarts estate.[2] According to the complaint, Kobseff was initially amenable to Mourey purchasing the property through the estate but then changed her mind. She indicated she would take over as administrator of the estate and would not be selling the property to Mourey. As an heir to the estate, Kobseff had priority for appointment as administrator. The fiduciary therefore dismissed her probate petition and Kobseff was appointed as administrator instead.

On April 26, 2024, Mourey "served and filed a Creditor's Claim against [Kobseff] and the Estate of William Bellarts."[3] The creditor's claim was filed in the probate court. It sought reimbursement of the roughly $14,000 Mourey had paid to get the property out of foreclosure plus about $26,000 for the time he and his staff spent on the matter. As administrator of the estate, Kobseff "rejected the claim on June 10, 2024." As alleged in the next sentence of the complaint: "Therefore, [Mourey] seeks the remedies as described therein."

---

[2] Although the complaint fails to explain this allegation, Thompson was a nephew of Bellarts's (and also Kobseff's brother) but was adopted at age 37 by a woman in 1991. The parties agree that as a result of his adoption as an adult, Thompson was not an heir to Bellarts's estate. Thompson died in 2023.

[3] Although filed as a creditor's claim on the Judicial Council Creditor's Claim form, this was not in fact a "claim" within the meaning of the Probate Code because it was not a demand for payment for liability of the decedent Bellarts, taxes incurred before his death, or funeral expenses. (Prob. Code, § 9000, subd. (a).) Because it was filed as a creditor's claim, however, we will refer to it as such in this opinion.

The first cause of action for breach of fiduciary duty alleged: "As administrator of the Estate of William Bellarts, [Kobseff] owes [Mourey] a fiduciary duty. [Kobseff] breached her fiduciary duty by engaging in the above pled wrongful conduct by refusing to reimburse and compensate [Mourey] for the money and efforts spent protecting the Property based on a good faith agreement for [Mourey] to purchase said Property."

The second cause of action for unjust enrichment alleged that Kobseff was "unjustly enriched by her wrongful conduct as alleged above, all to [Mourey]'s detriment."

The third cause of action for constructive trust alleged: "As a result of the above plead wrongful denial of [Mourey]'s claims, a constructive trust has been formed in which [Kobseff] is an involuntary trustee for the benefit of [Mourey] concerning the wrongful withholding of assets being currently held in the Estate of William Bellarts."

B. *Anti-SLAPP Motion and Opposition*

Kobseff filed a special motion to strike the complaint under the anti-SLAPP statute. (§ 425.16.) She argued that all three causes of action were based on her rejection of Mourey's creditor's claim in the probate proceedings, which was protected petitioning activity under the anti-SLAPP statute. She further argued that Mourey could not establish a probability of success because the statute of limitations on his claims had expired; the claims were barred by the statute of frauds; the complaint did not specify whether Mourey's contract with Thompson was oral or written and did not adequately allege the existence of a contract; Kobseff was mandated by law to deny the creditor's claim; Mourey failed to satisfy the heightened pleading requirements for fraud; and the complaint was unverified.

Kobseff submitted a declaration in support of the motion. She explained that Bellarts was her uncle and Thompson was her biological brother. Thompson died in 2023. Kobseff was one of two heirs to Bellarts's estate, the other being a great-nephew. After Kobseff learned of her uncle's death and Mourey's 2022 communications with Thompson, she repeatedly asked Mourey for a copy of his contract with Thompson. He never provided one. When Kobseff learned about the foreclosure on her uncle's property, she paid the delinquent mortgage payments and fees and continued to make the monthly mortgage payments thereafter. According to Kobseff, she never agreed to sell the property to Mourey.

Kobseff also requested judicial notice of documents filed in the Bellarts probate action, including (1) a holographic will dated June 3, 1998 and signed by Bellarts leaving all of his property to Kobseff's mother, and (2) Kobseff's mother's death certificate showing that she died 22 years later on July 8, 2020.

5

Mourey opposed the anti-SLAPP motion. In his opposition, he asserted that Kobseff as administrator of the Bellarts estate "wrongfully rejected [his] timely and lawful creditor's claim" and he "had no choice but to file the operative complaint in civil court within 90 days of the rejection." He asserted: "[Kobseff]'s arguments fail because (1) [Mourey]'s claims arise from [Kobseff]'s wrongful actions as administrator, as alleged, and are not time-barred . . . , and (2) [Kobseff] cannot knowingly and intentionally lead [Mourey] to believe he will be reimbursed his time and costs, then deny his claims and call it protected activity as a court appointed administrator." Mourey argued Kobseff had failed to make the required showing that the challenged causes of action arose from protected activity. Relying on *Graham-Sult v. Laino* (9th Cir. 2014) 756 F.3d 724 (*Graham-Sult*), he asserted that "improper actions of a personal representative ostensibly in furtherance of their fiduciary duties are not protected activity."

Mourey submitted no declaration of his own in opposition to the motion, but he submitted a declaration from his attorney with attached exhibits, including Kobseff's rejection of Mourey's creditor claim in the probate action. Mourey's attorney asserted that Kobseff had initially said she was not opposed to Mourey purchasing the property and agreed that Mourey "could file a creditor's claim for reimbursement if negotiations failed on the purchase price." He further asserted that Kobseff had "allowed [Mourey], [the fiduciary], and myself, [to] do all of the leg work to obviously just step in at the end and deny the claims in bad faith to save herself money as the heir of the Estate." According to Mourey's counsel, Kobseff "knew that [Mourey] was owed reimbursement and wrongfully denied his claims . . . ."

6

## C. *Trial Court's Ruling*

After an unreported hearing, the court issued a detailed order granting Kobseff's anti-SLAPP motion to strike the complaint, granting her request for judicial notice, and awarding her $5,460 in attorneys' fees and costs.

In its ruling on prong one of the anti-SLAPP statute, the court found that Mourey's claims all arose from protected petitioning activity because they "are based on allegations that [Kobseff] wrongfully rejected [Mourey]'s creditor's claim in the Probate Action in her capacity as Administrator of Decedent's Estate."

In its ruling on prong two, the court concluded that Mourey had not met his burden of establishing a probability of success on any of his claims. The court explained: "[Mourey] does not address the elements of a breach of fiduciary duty cause of action or explain how the evidence attached to the declaration of [his] counsel supports such a claim. Additionally, [Mourey] does not explain how *Bellarts's* Estate (and thus [Kobseff] as the Administrator) is bound by [Mourey]'s agreement with *Larry Thompson* concerning the subject property, where Thompson was . . . adopted as an adult in 1991, Thompson died on January 3, 2023, and Thompson was thus neither a beneficiary of nor had any interest in Bellarts's Estate. . . . Moreover, [Mourey] does not provide any evidence or argument his creditor's claim was timely filed given it was filed over one year after the deaths of Bellarts and Thompson. (Code Civ. Proc, § 366.2.) Nor does [Mourey] sufficiently provide evidence or argument that [Kobseff]'s denial of the creditor's claim constituted a breach of her fiduciary duties owed to [Mourey], or that [Kobseff] breached her duties to [Mourey] based on conduct that occurred *before* she was appointed as Administrator. [¶] Because [Mourey] has not shown a probability of prevailing on the breach of fiduciary duty

7

claim and has not addressed the two grounds for relief, [Mourey] has not shown a probability of prevailing on an independent cause of action to support his claim for equitable relief for unjust enrichment or constructive trust." (Bolding omitted.)

DISCUSSION

I

Mourey argues that the trial court erred in finding in its prong one ruling that his claims arose from protected activity under the anti-SLAPP statute. We disagree.

A. *The Anti-SLAPP Statute*

"The anti-SLAPP statute enables courts, early in litigation, to strike meritless claims in lawsuits when those claims risk chilling 'continued participation in matters of public significance.' (§ 425.16, subd. (a); see *id.*, subds. (b)(1), (f).) 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (*Id.*, subd. (b)(1).)" (*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 871.)

The statute defines " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include in relevant part: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any

8

other official proceeding authorized by law, . . . or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) The first step is often referred to as "prong one" and the second as "prong two."

To determine whether a defendant has shown that a claim arises from protected activity, courts consider "whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, italics omitted.) The focus is not the form of the cause of action or claim, "but, rather, the defendant's activity that gives rise to his or her asserted liability — and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92, italics omitted.) A "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)

We review the grant or denial of an anti-SLAPP motion de novo. (See *Park, supra*, 2 Cal.5th at p. 1067.)

9

B. *Analysis*

As noted, the trial court found that Mourey's claims all arose from protected petitioning activity because they were based on allegations that Kobseff acting as administrator of the estate wrongfully rejected his creditor's claim in the probate action.

Mourey does not dispute that Kobseff's denial of the creditor's claim is protected petitioning activity. The anti-SLAPP statute by its terms applies to oral or written statements made in a judicial proceeding or in connection with an issue under consideration or review by a court. (§ 425.16, subd. (e)(1), (2).) Courts have adopted a fairly expansive view of what constitutes litigation-related activity within the scope of section 425.16. (*Michael K. v. Cho* (2025) 113 Cal.App.5th 1, 10.) "The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation." (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.) Kobseff's denial of Mourey's creditor's claim was a writing made in a judicial proceeding and her decision to deny the claim was conduct relating to the probate court litigation. Thus, it was protected petitioning activity. (See, e.g., *Urick v. Urick* (2017) 15 Cal.App.5th 1182, 1194–1195 [petition filed in probate court constituted protected petitioning activity].)

Mourey nevertheless argues that his claims are based on his own creditor's claim, rather than Kobseff's denial of his creditor's claim. We do not follow the logic of his argument. The basis for Mourey's claim of liability against Kobseff cannot possibly be his own filing of the creditor's claim. Kobseff cannot be liable to Mourey simply because Mourey filed a creditor's

10

claim. If Kobseff had allowed the claim, Mourey would have nothing to complain about. What he is complaining about is that she denied it.

As the trial court ruled, the complaint itself makes this plain. Its general allegations state that Kobseff "rejected the claim on June 10, 2024" and "[t]*herefore*, [Mourey] seeks the remedies as described therein." (Italics added.) The claim for breach of fiduciary duty alleges that Kobseff "breached her fiduciary duty" as administrator "*by refusing to reimburse and compensate*" Mourey. (Italics added.) The claim for unjust enrichment alleges that Kobseff was "unjustly enriched *by her wrongful conduct as alleged above*, all to [Mourey]'s detriment." The claim for constructive trust alleges that such a trust arose "[a]s a result of the above plead *wrongful denial of* [*Mourey*]'s *claims*." (Italics added.)

Mourey's opposition to the anti-SLAPP motion likewise asserted that Kobseff had "wrongfully rejected [his] timely and lawful creditor's claim" and that his claims "arise from [her] wrongful actions as administrator." Moreover, Mourey's counsel's own declaration in opposition to the anti-SLAPP motion further confirmed that Mourey was suing Kobseff because she had allegedly "den[ied] the claims in bad faith to save herself money as the heir of the Estate" and "wrongfully denied his claims." The record is therefore clear that Mourey's claims were based on Kobseff's allegedly wrongful denial of his creditor's claim, not his own filing of a creditor's claim, which could not provide any basis for relief against Kobseff.

As he did below, Mourey relies on the Ninth Circuit's decision in *Graham-Sult, supra*, 756 F.3d 724, for the proposition that "improper actions of a personal representative ostensibly in furtherance of their fiduciary duties are not protected activity." As the trial court correctly explained, however, "conduct that would otherwise come within the scope of the anti-SLAPP

11

statute does not lose its coverage . . . simply because it is *alleged* to have been unlawful or unethical." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 910–911.) *Graham-Sult* said nothing to the contrary, and Mourey offers no other response to the trial court's reasoning on this point.

We therefore conclude the trial court correctly ruled Mourey's claims all arose from protected petitioning activity. In his opening brief, Mourey has not addressed the court's prong two ruling that he failed to establish a probability of success on his claims. To the extent Mourey addresses prong two in cursory fashion for the first time in his reply brief, he has forfeited the issue. (See *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275–276 [issues raised for the first time in reply brief ordinarily will not be considered].) Absent any proper challenge to the court's prong two ruling, we therefore affirm the order granting the anti-SLAPP motion.

## DISPOSITION

The order is affirmed.  Kobseff is entitled to recover her costs on appeal. Kobseff may request additional attorney's fees on appeal by way of a motion filed in superior court after the remittitur has issued.  (Cal. Rules of Court, rule 3.1702(c).)

BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.